IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

CTH 1 Caregiver,

Plaintiff,

v.

Fred Owens, Andre Bauer, Ken Ard, Eugene A. Laurent, Tana Vanderbilt, and Sam Davis,

Defendants.

C/A No. 8:11–2215-TMC

**OPINION & ORDER**

This matter is before the court on the following motions: Defendant Fred Owens' Motion to Strike (Dkt. # 8); Defendants Sam Davis, Eugene A. Laurent, and Tana Vanderbilt's Motion to Strike (Dkt. # 14); Defendants Ken Ard and Andre Bauer's Motion to Dismiss (Dkt. # 11); Defendants Sam Davis, Eugene A. Laurent, and Tana Vanderbilt's Motion to Dismiss (Dkt. # 21); and Plaintiff CTH 1 Caregiver's Motions to Amend the Complaint (Dkt. # 45) and Seal Documents (Dkt. # 46). Responses (Dkt. # 28, 29, 35, 47, 48, 49, 51) and replies (Dkt. # 38, 39, 40, 50, 52, 53) have been filed and these motions are ripe for resolution.

## I. Background/Procedural History

Pursuant to a contract with the Newberry County Disabilities and Special Needs ("DSN") Board, Plaintiff was formerly the caregiver of two severely disabled women, referred to in the Complaint as Sarah Doe and Sally Roe. (Compl. ¶¶ 2, 26, 27). For approximately nine years, Plaintiff provided care and supervision in her home to Doe and Roe under a foster care program known as Community Training Home I ("CTHI"). (Compl. ¶¶ 2, 4). Plaintiff's CTHI license was revoked in the fall of 2009 and Plaintiff alleges in her Complaint that it was in retaliation for her inquiries regarding the payments

made to CTHI caregivers and for telling hospital personnel that Doe's scars on her arms were from the time she was in the custody and care of a state agency. (Compl. ¶¶ 4-5, 6-7, 109).

Specifically, Plaintiff alleges she inquired about a raise and subsequently she asked to speak with the Newberry DSN Board about its failure to give CTHI caregivers an increase in payments, but her requests were refused. (Compl. ¶¶ 139, 144). Plaintiff contends that Defendants participated in a financial scheme to prevent CTH1 caregivers from being paid a fair wage while overbilling the government for the CTH1 caregivers' services and that her inquiries inadvertently threatened to expose Defendants' fraudulent actions. (Compl. ¶109; Dkt. # 29 Pl.'s Mem Opp. Mots. to Strike at 4).

Plaintiff alleges that subsequently on May 11, 2009, Doe secretly retrieved a moldy hamburger bun from Plaintiff's kitchen trash can and made a sandwich with it which she took with her to a workshop run by Defendant Owens. (Compl. ¶¶ 146-137). She alleges that in retaliation for her inquiries, Defendant Owens filed a report that Plaintiff had neglected Doe with law enforcement, and an investigation was initiated. (Compl. ¶¶ 148, 150). Plaintiff alleges that, even though the allegations of neglect were not substantiated, Roe and Doe were removed from Plaintiff's home without notice on May 28, 2009. (Compl. ¶¶ 150-154, 159). In August or September 2009, Plaintiff's CTHI license was revoked. (Compl. ¶¶ 79, 241, 251).

Plaintiff filed this action against Defendants alleging the following causes of action: 1) fraudulent misrepresentation; 2) interference with a contract; 3) wrongful termination; 4) § 1983 - due process and equal protection violations and conspiracy; 5) common law conspiracy; 6) defamation; and 7) intentional infliction of emotional distress.

## II. Discussion

### A. Defendants' Motions to Dismiss and Plaintiff's Motion to Seal

In their Motions to Dismiss, Defendants contend the complaint should be dismissed because Plaintiff is proceeding anonymously without permission from the court in violation of Rule 10(a), Fed. R. Civ. P. Plaintiff contends she is protecting the privacy of innocent third parties, Roe and Doe. Plaintiff contends Defendants' motions should be denied and this action should be allowed to continue anonymously because this case involves matters of an intensely personal nature regarding persons with disabilities. She specifically argues that, in light of the allegations regarding Doe's sexual assault and abortion, the identity of these nonparty disabled persons should be protected. Finally, Plaintiff contends that Defendants are aware of her identity and would not be prejudiced by this action proceeding anonymously. Alternatively, Plaintiff requests leave to file an amended complaint.

Plaintiff has also filed a motion to seal which she states is an attempt to resolve Defendants' objections to her proceeding anonymously. She has filed a separately sealed document in which she reveals her identity. In this motion, Plaintiff "requests an order approving the use of 'CTH I Caregiver' to identify the Plaintiff in the amended complaint and all documents filed with this Court." (Dkt. # 46 - Pl.'s Mot. to Seal at 1). Specifically, she is seeking "(1) an order finding that it is not necessary to identify the Plaintiff's name in court records at this time, because the Defendants (sic) rights have not been violated, since they know her true identity, or, in the alternative, (2) an order sealing the attached document identifying the name of the Plaintiff." (*Id*. at 3).

Generally, the identity of the parties in an action should not be concealed. Courts have long held that the First Amendment protections of freedom of speech and press safeguard the public's right to attend trials, which must be "open to the public absent an

overriding and clearly articulated interest to the contrary." *Doe 1 v. Marten*, 219 F.R.D 387, 390–91 (E.D. Va. 2004) (*citing Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980)). A plaintiff seeking to proceed anonymously must show that he or she has a substantial privacy right that outweighs the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). This presumption of openness is firmly rooted in our nation's law. *Marten*, 219 F.R.D. at 390.

Embodying the presumption of openness, the Federal Rules do not provide for suits by persons using fictitious names or for anonymous plaintiffs. *Id. See also Coe v. United States Dist. Court*, 676 F.2d 411, 415 (10th Cir. 1982). Rule 10(a) provides:

> Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.

Plaintiffs have been permitted to proceed under pseudonyms only under certain circumstances. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). It is the exceptional case in which a court allows a party to proceed anonymously. *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993)(allowing a party to proceed anonymously is a "rare dispensation").

As noted above, Defendants seek a dismissal of this action based upon Plaintiff's failure to seek permission to proceed anonymously. While the Fourth Circuit Court of Appeals has not ruled on this issue, some courts have held that, absent permission to proceed anonymously, if a complaint fails to comply with Rule 10(a) and does not divulge the plaintiff's identity, its filing is ineffective to commence an action and the court lacks jurisdiction over the unnamed parties. *See, e.g., Nat'l Commodity & Barter Ass'n. et al v. Gibbs*, 886 F.2d 1240 (10th Cir. 1989). Plaintiff's response that Defendants know or should know Plaintiff's identity or that she will reveal her identity under seal misses the point. It is the public, not the opposing party or the court, which has an interest in the

disclosure of the parties' identities. While Plaintiff did not initially seek permission to file an anonymous action, the court declines to dismiss this action at this point. Rather, the court will consider Plaintiff's argument that she should be allowed to continue anonymously.

When determining whether such an exception is justified and a party is allowed to proceed anonymously, a court should consider the following factors:

> whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993). A final factor often taken into account in addressing the need for anonymity is whether there are other mechanisms that might suffice as well to protect all legitimate interests. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 190 (2nd Cir. 2008). Additionally, it is the litigant seeking to proceed anonymously or under pseudonym that bears the burden to demonstrate a legitimate basis for proceeding in that manner. *See Qualls v. Rumsfeld,* 228 F.R.D. 8, 13 (D.D.C. 2005).

Applying the factors set forth in *James*, the court acknowledges that Plaintiff's allegations peripherally involve matters of a sensitive and personal privacy nature. However, courts have generally been reluctant to provide anonymity based on a plaintiff's fear of embarrassment over the revelation of personal matters. *See, e.g., Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). Types of cases in which plaintiffs have been permitted to proceed anonymously in other courts include birth control cases, abortion cases, welfare cases involving minors born to unmarried parents, and cases involving issues of homosexuality. *See Doe v.*

*Deschamps*, 64 F.R.D. 652, 653 (D.Mont. 1974) (*citing Roe v. Wade*, 410 U.S. 113 (1973) (abortion); *Doe v. Gillman*, 347 F.Supp. 483 (N.D.Iowa 1972) (involving a child born out of wedlock); *Doe v. Commonwealth's Attorney for City of Richmond, 403 F.Supp. 1199* (E.D.Va.1975) (challenging the constitutionality of a state sodomy statute as applied to consensual homosexual activity). Of course, these cases involve the plaintiff's privacy and identification of a plaintiff would impact a plaintiff's privacy. Here, identification of Plaintiff will not by itself impact the nonparties' privacy. While there are allegations in the complaint that one of the nonparty disabled persons was sexually assaulted and underwent an abortion over thirty years ago, Plaintiff's identity can be disclosed while the identity of the nonparty persons, Doe and Roe, can be protected through a confidentiality order.

Further, while Plaintiff alleges there is evidence of retaliation by certain Defendants, the retaliation would not be prevented by allowing Plaintiff to proceed anonymously at this point. As Plaintiff notes, Defendants are, or should be, aware of the identities of the Plaintiff and the nonparty disabled persons and Plaintiff states she is willing to identify herself to any Defendant who has not determined her identity. Accordingly, identification of Plaintiff in this action will not increase any retaliation from Defendants and there is no allegation that there is any risk of retaliation from any other source.

Additionally, Plaintiff and the nonparty disabled persons are not minors. Plaintiff, however, contends that the nonparty disabled persons have the mental capacities of children and therefore should be protected. Here, however, as stated above, the nonparties can be protected through the use of a confidentiality order, rather than allowing Plaintiff to proceed anonymously. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d at 190 (finding court should consider whether there are other mechanisms that might suffice as well to protect all legitimate interests). Finally, while this action is one against the

government, "[t]he simple fact that plaintiff sues a governmental entity does not give the court more reason to grant her request for anonymity." *Doe v. Pittsylvania County,* 2012 WL 370023 (W.D.Va. 2012). The balance of these factors weighs in favor of not allowing Plaintiff to proceed anonymously.

Based on the foregoing, the court denies Plaintiff's belated request to proceed anonymously set forth in her Motion to Seal. However, rather than dismiss this action as Defendants request, the court grants Plaintiff's alternative request, leave to file an amended complaint.[1] The parties are directed to also file a confidentiality order to protect the identity and privacy of Doe and Roe.

**B. Defendants' Motions to Strike[2]**

Defendant Owens and Defendants Davis, Laurent, and Vanderbilt have filed separate motions to strike certain paragraphs from the complaint. Together these Defendants seek to strike the following paragraphs: 49-50, 58-59, 66 in part, 67-70 (and footnote 3), 105-110 (and footnote 4), 111-118, 120-135, 137-138, 148 in part, 224, 227,

---

[1]Plaintiff also alleges that her decision to protect the identity of Roe and Doe is "justified by the requirements of HIPAA [Health Insurance Portability and Accountability Act], separate and apart from the issues of embarrassment to non-parties." (Dkt. # 28-Pl.'s Mem. Opp. Mot. to Dismiss at 13). Covered entities under the regulations include "a health plan," "a health care clearinghouse," and "a health care provider who tranmits any health information in electronic form . . ." 45 C.F.R. § 160.102(a). Assuming Plaintiff even qualifies as a "covered entity" under HIPAA, 45 C.F.R. § 164.512(e) provides that, pursuant to a court order, a "covered entity may disclose protected health information in the course of any judicial or administrative proceeding . . ." *Id*. The parties are to enter into a confidentiality agreement with respect to disclosure of documents and information regarding Doe and Roe. Accordingly, at this point, the court does not believe that the identification of only Plaintiff conflicts with any statutory confidentiality requirements.

[2]While the Court may deny as moot a Rule 12 motion filed before an amended complaint, *see Ramotnik v. Fisher*, 568 F.Supp.2d 598, 599 n. 1 (D.Md. 2008), the court declines to do so in this case as substantially the same objected to paragraphs are present in the proposed amended complaint. (Am. Compl. ¶¶ 60-61, 73, 82-87,127-157, 159-160, 167, 213-214, 253-255, 257-259, and footnotes 2 on page 14 and 3 on page 21).

and 229-231. In addition to the preceding paragraphs, Defendant Owens also seeks to strike paragraph 119 and Defendants Davis, Laurent, and Vanderbilt also seek to strike paragraphs 187-189.

Upon motion by a party, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money. *Billips v. NC Benco Steel, Inc.*, No. 5:10CV95–V, 2011 WL 4829401, at *1 (W.D.N.C. Oct.12, 2011). Despite the broad discretion afforded to district courts under this rule, striking a party's pleadings is considered an extreme measure and thus such motions are viewed with disfavor and granted sparingly. *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (internal quotation marks and citations omitted); *see also Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 247 (4th Cir.2007) (noting that district court "was aware" that motions to strike under Rule 12(f) "are to be granted infrequently").

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F.Supp.2d 434, 437 (S.D.N.Y. 2005) (*citing Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "Scandalous" includes allegations that cast a cruelly derogatory light on a party to other persons. *See Skadegaard v. Farrell*, 578 F.Supp. 1209, 1221 (D.N.J. 1984). "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally

available." Wright & Miller 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2011).

In paragraph 49, Plaintiff alleges that "most of Ard's campaign funds have come from the long term care industry he is charged with investigating." (Compl. ¶ 49). Plaintiff then alleges that "Ard has spent these campaign funds to purchase an evening gown for his wife and, for expensive trips and to buy electronics for personal use." (Compl. ¶ 50). Defendants contend these paragraphs are irrelevant to Plaintiff's claims.

Plaintiff's response is that the Defendants were in a conspiracy and the "court may take judicial notice of the fact that Defendant Ard is under investigation for matters related to the funding he has received from the long term care industry he is charged with policing." (Pl.'s Mem. Opp. Mot. to Strike at 6).[3] Alleging that most of Ard's campaign funds were from the long term care industry and then alleging he misspent campaign funds on personal items do not in any way support Plaintiff's specific allegations that Defendants were involved in a conspiracy to terminate her as a CTH1 caregiver. The court agrees with the Defendants and finds these paragraphs should be stricken. The court notes, however, that the court's decision to strike these allegations does not contemplate any ruling on the admissibility of this information at trial, if appropriate. Rather, it is simply a finding that these allegations are immaterial to Plaintiff's claims as raised in her complaint.

In paragraphs 66-70 and footnote 3, Plaintiff alleges that almost thirty years ago Defendant Vanderbilt failed to investigate whether Doe was sexually assaulted and allowed her to return to a foster home where other children were being abused.[4] Plaintiff

[3]The court notes that after this motion was briefed, in March 2012, Defendant Ard was indicted and pled guilty to seven counts of ethics violations.

[4]In paragraph 66, Plaintiff also alleges Vanderbilt and the other Defendants have conspired "to prevent Plaintiff from returning to work at the Newberry DSN Board by denying Plaintiff due process and assisting in the removal of Sarah Doe and Sally Roe

also alleges that "Vanderbilt has had knowledge of DDSN billing Medicaid for attorney fees incurred in providing legal representation of Sarah Doe and Sally Roe by including these costs in Medicaid cost reports." (Compl. ¶ 70). In footnote 3, Plaintiff alleges: "More than twenty-three years after being sexually abused by a coach, a victim of sexual abuse obtained a jury verdict in of $105 million against the school in *Doe v. Porter Gaud et al.,* Case No. C/A No. 98-CP-10-332, verdict in Charleston County Court of Common Pleas in 2000."

Plaintiff alleges that these allegations are relevant and provide background information to show the motive that Defendants Vanderbilt and Owens had to terminate Plaintiff. Plaintiff contends that the expressed reasons for terminating Plaintiff as a provider, Doe's use of a moldy hamburger bun, were based on pretext.[5] Plaintiff's argument is that the jury should be allowed to consider Vanderbilt's response to a moldy hamburger bun compared to her response to Sarah Doe's sexual assault and abortion. The court finds the references in paragraphs 66-70 to incidents alleged to have occurred thirty years ago appear to be highly prejudicial and the connection to Plaintiff's claims is tenuous. However, a court should not exercise its discretion under Rule 12 to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy. *Tonka Corp. v. Rose Art Industries, Inc.*, 836 F.Supp. 200, 217 (D.N.J.1993)(holding motions to strike will generally "be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues."). Allegations regarding the sexual

---

from the home of the Plaintiff without a showing of probable cause." (Compl. ¶ 66). However, Defendants seek only to strike the first sentence.

[5]She also contends that she "was terminated because of the risk of abuse at the workshop coming to light." (Pl.'s Mem. Opp. Mot. to Strike at 3).

assault of Doe many years ago may be relevant, if at all, to establish whether the reason for terminating Plaintiff was pretextual. Again, this ruling does not contemplate a ruling on admissibility of this evidence and while the court is highly skeptical of the relevancy of these allegations to the present action, the court finds it would be improper to strike these allegations from the complaint at this point. *Bailey-P.V.S. Oxides, LLC, v. S&K Packaging, Inc.*, C/A No. 8-1596, 2009 WL 425605 *2 (W.D.Pa. Feb. 19, 2009)(unpublished)(holding that it was premature to strike allegations in complaint just because they might be inadmissable at trial). Accordingly, these paragraphs should not be stricken.

However, Plaintiff's citation to the *Porter Gaud* case in footnote 3 is clearly immaterial and irrelevant setting forth nothing more than an inapplicable legal conclusion and should be stricken. While Plaintiff argues that it is relevant because it shows that a person who covers up sexual abuse may be held liable decades later, the court notes that this is not an action seeking to hold anyone liable for a sexual assault.

Defendants contend that paragraphs 105-135, 137-138, and part of 148 and footnote 4 should be stricken. In these paragraphs, Plaintiff alleges that the parental rights of Sarah Doe's parents were terminated by the family court due to neglect, but a guardian was never appointed for her. Plaintiff then again sets forth the history and aftermath regarding Doe's sexual assault and abortion thirty years ago and Defendant Vanderbilt's alleged role in failing to report the sexual assault to law enforcement or the Foster Care Review Board, or of the resulting court-ordered abortion. In paragraph 148, Plaintiff alleges "Defendants' reaction to a moldy hamburger bun was very different from Vanderbilt's response to Sarah Doe being sexual assaulted: Owens immediately filed a report with law enforcement, reporting that Plaintiff had neglected Sarah Doe." Defendants seek to strike only the first part of paragraph 148, i.e. references to Doe's

sexual assault. Again, for the same reasons as set forth above, the court will not strike the allegations regarding the prior sexual assault at this time.

In footnote 4, Plaintiff states: "Later, in 2006, DDSN argued to the South Carolina Supreme Court that it had no duty of care to protect a person who had mental retardation in its care from sexual assault. The Supreme Court disagreed, finding that DDSN has a duty of care to persons receiving services in its facilities. *Madison ex rel. Bryant v. Babcock Center,* Inc., 371 S.C. 123, 134, 638 S.E.2d 650, 655 (2006)." (Compl. at 18 n. 4). The court finds this footnote irrelevant to this action and finds it should be stricken.

In paragraphs 58 and 59, Plaintiff alleges that SCDDSN pays the Burton Center $46,000.00 more a year than was paid Plaintiff to care for Sarah Doe in a less restrictive setting. In paragraph 224, Plaintiff again alleges SCDDSN has a duty to place consumers in the least restrictive setting. Defendants contend Plaintiff is not a consumer and does not have standing to assert a claim for any consumers. Defendants Davis, Laurent, and Vanderbilt also seek to strike paragraphs 187-189. In these paragraphs, Plaintiff alleges that Owens and "individuals at DDSN" moved Doe without a court order to a more restrictive setting in violation of *Olmstead* and Plaintiff again alleges that SCDDSN is paying $44,000.00 more a year than was paid to Plaintiff to care for Doe. Finally, Plaintiff alleges Owens also caused Roe to be moved to a more restrictive setting operated by his agency. Defendants argue that these paragraphs are immaterial. The court disagrees and finds that these paragraphs may be relevant and should not be stricken. Additionally, the court notes that substantially the same information is set forth in paragraph 16, which Defendants have not sought to strike. While the Plaintiff does not have standing to assert any claims on behalf of Roe and Doe, the court finds these allegations should not be stricken as they could be relevant to

Plaintiff's claims of retaliation and pretext.

In paragraphs 227, 229, 230, and 231, Plaintiff alleges Owen caused another disabled woman, Sue Doe, to report that her father had kicked her and Owens reported this allegation of physical abuse to SLED after the woman's guardian filed a lawsuit against SCDDSN. Plaintiff alleges the Lieutenant Governor's Ombudsman investigated Owens' allegations of abuse and found them unsubstantiated. Plaintiff alleges the Ombudsman determined that Owens had improperly discussed pending legal proceedings in violation of a court order, "but no consequences came to Owens, upon information and belief." (Compl. ¶ 230). Plaintiff then alleges that "a DHHS hearing officer ordered DDSN to move Doe away from Newberry DSN because her health and safety were being jeopardized in the facility operated by Owens." (Compl. ¶ 231). Plaintiff has not set forth any argument in her response as to the relevancy of these allegations. The court finds these paragraphs are irrelevant to the current action and they should be stricken.

**C. Plaintiff's Motion to Amend the Complaint**

Plaintiff has filed a motion to amend her complaint. In this motion, Plaintiff seeks to include new allegations regarding alleged acts committed by Defendants since the filing of the original complaint. Specifically, Plaintiff asserts that the Greenwood County Probate Court has appointed an independent guardian ad litem for Doe and that Defendants have interfered with the Plaintiff's attempt to restore her relationship with Doe. Plaintiff also seeks "leave to amend to provide the Court with the name of the Plaintiff under seal." (Pl.'s Mot. at Amend at 2).

Rule 15(a) of the Federal Rules of Civil Procedure provides that a plaintiff may amend her complaint once as a matter of course within 21 days of serving it or within 21 days of the filing of a responsive pleading. Fed.R.Civ.P. 15(a)(1). Otherwise, the plaintiff

must seek consent from the defendant or leave from the Court. The latter "should [be] freely give[n] . . . when justice so requires."

The court notes that Plaintiff's request for leave to amend and provide the court with her identity under seal is denied as discussed herein. However, after reviewing the proposed new allegations, court will allow Plaintiff to amend her complaint to add these new allegations as they appear relevant to her allegations of conspiracy and retaliation.[6]

In conclusion, Plaintiff is to file a new amended complaint in her own name, and not anonymously. Plaintiff may include the new allegations raised in her motion to amend. Further, because Plaintiff's proposed amended complaint includes paragraphs which are substantially similar to the ones stricken by the court, Plaintiff is directed to exclude these paragraphs.

Additionally, the court notes Plaintiff's original complaint was 54 pages long and contained 377 paragraphs along with 55 pages of exhibits. The proposed amended complaint is 59 pages long and contains 403 paragraphs along with 54 pages of exhibits. Plaintiff's complaints are unnecessarily taxing to follow as she has failed to follow Rule 8(a)(2), Fed. R. Civ. P., and provide a short and plain statement of her claims. This complaint could very well be drafted in less extensive language with equal effect. There are many repetitious and unnecessary allegations. "A complaint is not meant to persuade the court but to place the matter before the court in as clear a manner as possible. Persuasion is for the trial; the jury will not see the pleadings." *Hampton v. Hanrahan*, 522 F.Supp. 140 (D.C.Ill. 1981). The court directs Plaintiff to

[6]The court notes that a supplemental complaint is the proper pleading by which a plaintiff may allege acts or events which have occurred after the filing of the original complaint. Rule 15(d), Fed. R. Civ. P. However, this distinction is of no matter as Plaintiff will need to file an amended complaint to comply with the court's directives, and within this amended complaint, she may supplement her original allegations to include the new allegations set forth in her motion to amend.

comply with Rule 8 and invites Plaintiff to view this as an opportunity to prepare a simple, concise, and direct amended complaint.

### III. Conclusion

Based on the foregoing, Defendants' Motions to Strike (Dkt. # 8, and 14) are **GRANTED in part and DENIED in part**; Defendants' Motions to Dismiss (Dkt. # 11 and 21) are **DENIED**; Plaintiff's Motion to Amend (Dkt. # 45) is **GRANTED in part and DENIED in part**; and Plaintiff's Motion to Seal (Dkt. # 46) is **DENIED**. In light of the Plaintiff's Notice of Protection (Dkt. # 57), Plaintiff shall have until July 20, 2012, to file an Amended Complaint consistent with this order. Further, the Parties' Joint Motion to Stay the Scheduling Order (Dkt. # 55) is **DENIED** as moot. The parties are to submit a new proposed joint scheduling order and confidentiality order by August 6, 2012.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Greenville, South Carolina
July 2, 2012