IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jane Wecker Harrison, | ) | Civil Action No. 8:11-2215-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| Fred Owens, Andre Bauer, Ken Ard, | ) | |
| Glenn McConnell, Eugene A. "Andy" | ) | |
| Laurent, Tana Vanderbilt and Sam Davis, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before this Court is Defendants Eugene Laurent, Tana Vanderbilt, and Sam Davis's ("DDSN Defendants") Second Motion for Summary Judgment (ECF No. 164), and Defendant Fred Owens's Second Motion for Summary Judgment. (ECF No. 165.) After considering the arguments of the parties, the pleadings submitted and the record in this case, the pending motions are hereby GRANTED as set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

This is an action by Jane Wecker Harrison ("Plaintiff") against remaining Defendants Fred Owens, Eugene Laurent, Tana Vanderbilt, and Sam Davis (collectively "Defendants"). Pursuant to an alleged contract or agreement with the Newberry County Disabilities and Special Needs Board ("Newberry DSN"), Plaintiff was formerly a caregiver of two severely disabled women ("Sarah Doe" and "Sally Roe") as part of a "foster care" program called Community Training Home I ("CTH I"). (ECF No. 62, ¶ 2.) Plaintiff claims that her "CTH I license" was revoked as a retaliatory action to cover up a history of abuse of one of her clients and to prevent Plaintiff from exposing a financial scheme involving compensation for caregivers. (ECF No. 62, ¶ 3.) Plaintiff filed this action against Defendants alleging the following causes of action: 1) fraudulent misrepresentation; 2) interference

with a contract; 3) wrongful termination; 4) 42 U.S.C. § 1983 due process, equal protection, and related violations; 5) 42 U.S.C. § 1985 conspiracy; 6) common law conspiracy; 7) defamation; and 8) intentional infliction of emotional distress.  (ECF No. 62.)

On November 7, 2012, this Court granted former Defendants Ken Ard, Andre Bauer, and Glenn McConnell's Motion to Dismiss for Failure to State a Claim.  (ECF No. 89.) Subsequently, the DDSN Defendants, Laurent, Vanderbilt, and Davis of the South Carolina Department of Disabilities and Special Needs moved, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. (ECF No. 92.)  In an order Dated August 12, 2013, this Court granted these Defendants' motion only as to Plaintiff's claim for intentional infliction of emotional distress and denied the motion as to all other causes of action.  (ECF No. 136.)  On March 21, 2013, Defendant Fred Owens, individually and in his official capacity as the former Director of the Newberry Department of Special Needs Board, moved for summary judgment and, with regard to some of Plaintiff's causes of action, to dismiss for failure to state a claim.  (ECF No. 116.)  Plaintiff filed a response in opposition to the motion (ECF No. 122) and an amended response to the motion. (ECF No. 127.)  Defendant Owens filed a reply memorandum in support of the motion on April 29, 2013.  (ECF No. 128.)

On September 3, 2013, the DDSN Defendants moved for summary judgment, arguing, *inter alia*, that they are immune from suit on the federal claims under the qualified immunity doctrine because Plaintiff did not possess a clearly established liberty or property interest, nor did the DDSN Defendants violate any federal right of the Plaintiff.  (ECF No. 137-1 at 1.)  These Defendants also filed a motion pursuant to Rule 26(c) and Local Civil Rule 16.00(C), staying discovery until such time as the Court adjudicates the qualified immunity defense asserted in their motion.  (ECF No. 138.)  Plaintiff filed a lengthy response in opposition to the DDSN Defendants' motion, challenging Defendants' entitlement to qualified immunity and asking the Court instead to grant summary

judgment in favor of Plaintiff and restore Plaintiff's CTH I license.  (ECF No. 149.)  Plaintiff then filed a Motion to Correct and Supplement Plaintiff's Response to the DDSN Defendants' Motion for Summary Judgment and a request for an evidentiary hearing.  (ECF No. 151.)  Specifically, Plaintiff desired to correct errors and omissions in the response and sought an evidentiary hearing to aid the Court in determining whether it would be appropriate to grant partial summary judgment in favor of Plaintiff and rule that Plaintiff's CTHI license should be restored.  (ECF No. 151 at 8.)

In an order dated March 28, 2014, this Court issued an order denying Defendants' first motions for summary judgment for the present purposes, denying Defendants Laurent, Vanderbilt, and Davis's Motion to Stay Discovery (ECF No. 138) as moot, and granting in part and denying in part Plaintiff's Motion to Correct and Supplement Plaintiff's Response to the DDSN Defendants' Motion for Summary Judgment and Request for Evidentiary Hearing.  (ECF No. 151.)  In the March 28, 2014 order, this Court  granted defendants leave to re-file a dispositive motion limited to the issue of immunity and the points specifically set forth in the Court's order for additional briefing. (ECF No. 163.)  The DDSN Defendants and Defendant Owens filed their second motions on April 7, 2014. (ECF Nos. 164 & 165.) Plaintiff filed her response in opposition to the Defendants' motions on April 17, 2014 (ECF No. 166) and additional exhibits in support on April 18, 2014. (ECF No. 168.)  This Court held a hearing on the motions on May 21, 2014.  The matters are ready for ruling.

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## ANALYSIS

As noted in this Court's March 28, 2014 order, the remaining Defendants seek dismissal of the federal claims (42 U.S.C. §§ 1983 and 1985) against them on, among other reasons, the basis of qualified immunity. (ECF Nos. 116-1 at 14; 137-1 at 11.) Each of the remaining defendants pled qualified immunity as a defense in their answers to Plaintiff's amended complaint. (ECF No. 66 at ¶ 34; ECF No. 67 at ¶ 146; ECF No. 68 at ¶ 146; ECF No. 69 at ¶ 140.) As the DDSN Defendants point out in their motion to stay discovery, qualified immunity is a threshold question to be resolved by the Court. *See Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991) (noting that immunity is a threshold issue and discovery should not be allowed while the issue is pending).

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was *clearly established* at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* (emphasis added).

-4-

"Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

Determining whether an official is entitled to qualified immunity generally requires a two-step inquiry. *See generally Pearson v. Callahan*, 555 U.S. 223 (2009). Courts considering whether to dismiss a complaint based on qualified immunity should consider both "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* at 232 (citations omitted). The court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 236. Qualified immunity can be established, and is in fact, specifically encouraged, at the summary judgment stage when there is no genuine issue of material fact, and when the undisputed facts establish that the defendant is entitled to judgment as a matter of law. *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Plaintiff brings this lawsuit against Defendants in their "individual and official capacities" as each has "acted outside the scope of [his or her] employment under color of state law." (ECF No. 62 at ¶¶ 23, 61, 65, 77.) But qualified immunity is not a defense for individuals sued in their official, rather than personal, capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).[1] Previously,

---

[1] Federal law treats an action against defendants in their official capacities as an action against the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 61 (1989) ("[A] suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office" and thus is no different from a suit against the State itself). A municipality, cannot assert immunity, either absolute or qualified, as a defense to liability under 42 U.S.C. § 1983. *See Owen v. City of Independence, Mo.,* 445 U.S. 622, 650-52 (1980). In other words, immunity, either absolute or qualified, is a personal defense that is available only when officials are sued in their individual capacities. *Anderson v. Caldwell Cnty. Sheriff's Office*, 524 Fed. Appx. 854, 863 (4th Cir. Apr. 24, 2013) (unpublished decision) ("Public officer's immunity bars the state law claims against the officers in their individual capacities.")

this Court noted that the Defendants did not fully articulate a reasonable basis for immunity as to claims Plaintiff brought against Defendants in their official capacity. Accordingly, this Court granted Defendants leave to file a second motion for summary judgment fully addressing the issue of immunity with respect to the sum of Plaintiff's claims. The Defendants have filed supplemental motions incorporating their previous motions for summary judgment and other responsive pleadings. The Court has considered these arguments as set forth below.

A.   **Qualified Immunity as to Plaintiff's Claims Against the Defendants in their Individual Capacities.**

The DDSN Defendants contend that they are entitled to qualified immunity with respect to Plaintiff's claims against them in their individual capacities. (ECF No. 164-1 at 7.). Specifically, the DDSN defendants argue that Plaintiff's federal claims against them should be dismissed based on either or both of the two prongs of the qualified immunity analysis, i.e., that Plaintiff cannot show that the DDSN Defendants deprived her of a liberty interest, that Plaintiff cannot show a property interest in the DDSN license, and finally, that Plaintiff cannot show that any clearly established rights she had under the First Amendment were violated by the DDSN defendants. (ECF No. 164-1 at 7-8.) Defendant Owens also maintains he is entitled to qualified immunity with respect to Plaintiff's claims against him in his individual capacity. (ECF No. 165-1 at 6.) Defendant Owens argues that Plaintiff fails to demonstrate a cognizable, protected property interest necessary to prove a due process violation because the license at issue in this case was issued to the Newberry County DSN Board as the licensee (not Plaintiff personally). (ECF No. 165 at 9-10.) Defendant Owens also contends that Plaintiff failed to prove the existence of a cognizable, protected liberty interest. (ECF No. 165 at 9-10.) Defendant Owens also argues that Plaintiff failed to establish a violation of her free speech rights. (ECF No. 165 at 7-8.) In response, Plaintiff argues that her due process rights were clearly established, that her First and Fourth Amendment rights were violated, and that Defendants

conspired to harm her. (ECF No. 166.)

The Court agrees with Defendants' contention that Plaintiff is simply unable to make out a violation of a constitutional right and thus, Plaintiff cannot maintain her §§ 1983 and 1985 claims. The court has carefully reviewed the allegations of Plaintiff's Amended Complaint. Plaintiff's complaint presents several pendent state law claims as well as federal claims for: violations of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 under the free speech, due process, and equal protection clauses[2] "not to be deprived of her constitutionally protected interest in her liberty and property." (ECF No. 62 at ¶262); as well as a conspiracy claim brought pursuant to 42 U.S.C. § 1985 based on allegations that the Defendants conspired together to deprive her of property interests and relationships.  (ECF No. 62 at ¶¶ 296-297.)

1.  42 U.S.C. § 1983 Claims

The Court first addresses Plaintiff's federal claims against all of Defendants brought pursuant to 42 U.S.C. § 1983.  Importantly, 42 U.S.C. § 1983, " 'is not in itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (*quoting Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). To establish a violation under 42 U.S.C. § 1983, the plaintiff must prove: (1) that the defendant deprived him of a right secured by the Constitution and laws of the United States, and (2) that the defendant

---

[2] As a part of Plaintiff's § 1983 claim, Plaintiff's Amended Complaint states that "Defendants worked a denial of Plaintiff's rights, privileges, and immunities secured by the United States Constitution and by Federal law guaranteed by the First, Fourth, and Fourteenth Amendments of the Constitution." (ECF No. 262 at ¶ 274.)  Plaintiff then goes on to generally allege that Defendant Owens entered Plaintiff's home, searching and seizing paperwork about two women she had cared for and loved for many years as if they were her own children." (ECF No. 262 at ¶ 278.)  Throughout the course of this litigation, Plaintiff seemed to abandon any notion that her § 1983 claim was also based on a potential Fourth Amendment violation.  Plaintiff, however, recently asserted that Defendants violated her Fourth Amendment rights in her response in opposition to Defendants' motion for summary judgment with allegations addressed to Defendant Owens in particular, made as if Plaintiff had previously asserted a separate Fourth Amendment cause of action. (ECF No. 166 at 19.)  The Court addresses the matter below.

deprived the plaintiff of this right under color of state statute, ordinance, regulation, custom or usage. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001). "The first step in addressing any such claim is to identify the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271.

Plaintiff alleges generally that her First Amendment Right to free speech was violated through retaliatory conduct when she asked Defendant Owens to speak with the Newberry DSN Board of Directors about a raise—a matter she classifies as an issue of public concern. (ECF No. 62 at ¶ 265.) Plaintiff then suggests that Defendant Owens joined with other named Defendants to retaliate to prevent Plaintiff from exposing a financial scheme concerning compensation for CTH I caregivers, and that she was denied an opportunity for a hearing before she was deprived of a significant property interest. (ECF No. 62 at ¶¶ 270, 283.) In her opposition to the Defendants' second motion for summary judgment, Plaintiff phrases her First Amendment claim in the following manner— "Plaintiff has stated in sworn statements and in her Amended Complaint that her license and her career was terminated by the defendants after she (1) reported that Sarah had been abused while in state [custody], and (2) requested to go to Fred Owens' Board of Directors requesting a raise, because she and the other caregivers had been providing around-the-clock care... for years without a raise and they were earning less than minimum wage." (ECF No. 166 at 17.) Plaintiff further contends that she has shown that "the conduct of the Defendants - i.e. terminating her position and even her ability to work anywhere in the State under a DDSN program - would 'tend to chill a reasonable person's exercise of First Amendment rights.'" (ECF No. 166 at 17.)

To establish a First Amendment retaliation claim under § 1983, a plaintiff must show that: (1) her speech was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship exists between the plaintiff's speech and the defendant's retaliatory action. *Suarez Corp. Indus. v. McGraw*, 202 F.3d

676, 685–86 (4th Cir. 2000).  Bare or conclusory assertions of retaliation are insufficient to establish

a retaliation claim. *Adams v. Rice*, 40 F.3d 72, 74-75 (4th Cir.1994).   Plaintiff has not established

these elements and the claim fails for several reasons.  In viewing the facts in a light most favorable

to Plaintiff, a reasonable jury could not conclude that Defendants retaliated to violate Plaintiff's First

Amendment rights.   Most relevant here, Plaintiff does not set forth any specific speech for which she

was punished and the matters she generally references in her Amended Complaint and Affidavits are

not matters of public concern.  "Speech involves a matter of public concern when it involves an issue

of social, political, or other interest to a community." *Campbell v. Galloway,* 483 F.3d 258, 267 (4th

Cir. 2007) (internal citation and quotations omitted); *see also Connick v. Myers*, 461 U.S. 138, 147

(1983) (Whether the speech relates to a matter of public concern turns on "the content, form, and

context...as revealed by the whole record.").   On the other hand, statements that merely air

"[p]ersonal grievances, complaints about conditions of employment, or expressions about other

matters of personal interest" are not entitled to First Amendment protection. *Stroman v. Colleton

Cnty. School Dist.*, 981 F.2d 152, 156 (4th Cir. 1992).  It is clear from the record that the conduct

Plaintiff complains of relates to her own occupation, personal interests, and private matters.

Additionally, the allegations Plaintiff does make concerning her free speech claim are vague at

best—it is unclear as to what statements concerning Sarah's alleged abuse Plaintiff made, when and

to whom the statements were made, and the context in which the statements were made.  Further, as

to the second point, Plaintiff does not allege anything more than her desire to speak to the Board of

Directors on  the issue of compensation, but she does not allege that she ever made such a speech.

Although not squarely addressed in this Circuit, several circuits have recognized that a plaintiff must

in fact demonstrate that she actually engaged in constitutionally protected expression in order to

establish a First Amendment retaliation claim, meaning that an intended speech cannot form the basis

of a constitutional violation. *See Fogarty v. Boles*, 121 F.3d 886, 890–91 (3d Cir. 1997)("[I]n the

absence of speech, or, at the extreme, intended speech, there has been no constitutional violation cognizable under section 1983 based on an asserted 'bad motive' on the part of defendant."); *Barkoo v. Melby*, 901 F.2d 613, 619 (7th Cir. 1990)("Barkoo's private discussion of the taping with outer employees is not public speech... Barkoo provides no authority for the proposition that her free speech rights are deprived in violation of § 1983 when the speech at issue admittedly never occurred.") Based on the above analysis, the Court concludes that it is not clearly established that Plaintiff was engaging in constitutionally protected activity at the time of any alleged retaliatory conduct.   Further, the First Amendment right Plaintiff asserts, if it even exists, cannot have been clearly established at the time of the alleged statements at issue.   *See Rowe v. Benjamin*,  No. 3:12–cv–01201, 2012 WL 5306159, at *6 (D.S.C. 2012) ("the law is at best unsettled as to whether a public employee plaintiff may bring a First Amendment retaliation claim against a non-employer defendant for speech made pursuant to the employee's job duties. Importantly, though, it is not necessary for the Court to resolve this conflict and determine whether the facts alleged in this case make out a violation of a constitutional right. The above discussion makes plain that the First Amendment right Rowe asserts, if it even exists, cannot have been clearly established at the time of the statements at issue.") As a result, Defendants are entitled to qualified immunity as to Plaintiff's First Amendment retaliation claim.

Plaintiff also alleges that her due process rights were violated in that she did not have a hearing prior the alleged deprivation of a "significant property interest" and liberty interest concerning her employment and/or license. (ECF No. 62 at ¶¶ 262, 270-276, 283.) Section 1983 allows a private civil rights claim against state officials for violations of due process under the Fourteenth Amendment. 42 U.S.C. §1983.  But in order to demonstrate a due process violation, a plaintiff must first show she was deprived of a constitutionally protected liberty or property interest within the scope of protection of the Fourteenth Amendment. *See Tigrett v. Rector and Visitors of Univ. of Va.*,

-10-

290 F.3d 620, 628 (4th Cir. 2002) ("Whether a deprivation of constitutional rights has occurred is not dependent upon the subjective feelings or beliefs of a plaintiff."); *see, e.g,. Board of Regents v. Roth*, 408 U.S. 564, 579 (1972). Such an interest must be clearly recognized and protected by state law at the time of the injury to be considered a cognizable liberty or property interest. *Paul v. Davis*, 424 U.S. 693, 710-11(1976); *Bunting v. City of Columbia*, 639 F.2d 1090, 1093 (4th Cir. 1981) ("A property interest exists when one has a legitimate claim of entitlement to a right from such sources as state statutes, local ordinances, and employment contracts."). The Court has previously set forth the relevant case law and analysis as it relates to Plaintiff's due process allegations in its order of November 7, 2012, and the Court incorporates that discussion herein. (ECF No. 89 at 7-14.) As noted in this Court's previous order, Plaintiff fails to definitely identify this purported interest. (ECF No. 89 at 8.) In its November 7, 2012 order, this Court took great pains to parse through Plaintiff's complaint in an effort to identify any potential fundamental property or liberty interest. The Court ultimately concluded that Plaintiff's conclusory and unsupported statements failed to sufficiently identify a fundamental property or liberty interest or allege that the moving Defendants' conduct caused any deprivation or interference with process due. (ECF No. 89 at 14.) Since that time, Plaintiff has had ample opportunity to supplement the record amid the Court's concerns.

In response to Defendants' second motion for summary judgment, Plaintiff claims that her due process rights were clearly established and that she had to be operating under a contract or as an employee of the Newberry DSN Board. (ECF No. 166 at 12.) Plaintiff also seeks to invoke the "public policy exception" to the at-will-employment doctrine in support of her argument that she was an employee of the Newberry DSN Board and that Defendant Owens terminated her without notice. (ECF No. 166 at 12.) Plaintiff attaches general information regarding licensing standards and public information concerning the CTH I program as part of her opposition. (ECF No. 166 at 12.) Having fully reviewed the record in light of the arguments set forth in this case, this Court concludes that

Defendants are entitled to qualified immunity as to Plaintiff's due process claims because Plaintiff has failed to show a violation of any clearly established constitutional right. Whatever the interests Plaintiff claims in this matter, they cannot be deemed clearly established. The rights Plaintiff claims are so amorphous and ill-defined that even Plaintiff cannot even identify them.

As the Fourth Circuit has explained in *Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999), the specific right that a plaintiff asserts was infringed upon must be identified at a high level of particularity for the purposes of analyzing the applicability of a qualified immunity defense. *Edwards v. City of Goldsboro*, 178 F.3d 231, 250-51(4th Cir. 1999). Thus, for the right to have been clearly established, the contours of the right must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional. *Id.* at 251. There must be controlling authority within the Circuit itself conclusively demonstrating that the challenged action was unconstitutional. *Id.*; *see also Doe ex rel. Johnson v. South Carolina Dept. of Social Services*, 597 F.3d 163, 176-77 (4th Cir. 2010) (granting qualified immunity where no precedent from Supreme Court or the Fourth Circuit clearly established existence of constitutional right). Having reviewed the relevant law, the Court is unable to conclude that Plaintiff is a licensee of DDSN for the purposes of this analysis. As Defendants point out, the state law and practice indicate that a caregiver, such as Plaintiff, is not a DDSN licensee—instead a license is issued to provider agencies for certain facilities.[3] (ECF No. 164-1 at 6, 14.) Plaintiff's abstract need or desire or unilateral expectation in a license is simply insufficient to create an entitlement. *See Roth*, 408 U.S. at 577; *Sabet v. Eastern Virginia Medical Authority*, 775 F.2d 1266, 1269 (4th Cir. 1985) (citing *Leis v. Flynt*, 439 U.S. 438, 442 (1979)); *Bannum, Inc. v. Town of Ashland,* 922 F.2d 197 (4th Cir. 1990).

_____

[3] According to DDSN Regulation R. 88-210(A), (H), (I), DDSN issues licenses for CTH I homes to provider agencies, such as the Newberry County DSN Board, and not to individual caregivers, such as Plaintiff. S.C. Code Reg. 88-210.

-12-

To the extent Plaintiff is alleging that she has a property interest in employment, this claim also fails. Plaintiff appears to allege that she was an employee of the Newberry DSN Board because she "received a pay check" from that entity. (ECF No. 166 at 12; ECF No. 62 at ¶ 1.) Plaintiff alleges that she and other CTH I caregivers were treated as if they were employees of the Newberry DSN Board.[4] (ECF No. 166-32 at 3.). But, in an affidavit in support of his motion for summary judgment, Defendant Owens maintains that Plaintiff was neither an employee nor a contractor during her association with Newberry County DSN. (ECF No. 165-1 at 2; ECF No. 116-2 at ¶ 4.) Of course, as Defendant Owens points out, if Plaintiff was not an employee of the Newberry County DSN, she would not be entitled to certain procedural protections and process incident to formal employment. (ECF No. 165-1 at 9.) But even the status of "employee" does not bestow an automatic property interest in employment. In South Carolina, "employment at-will is presumed absent the creation of a specific contract of employment." *See Barron v. Labor Finders of South Carolina*, 393 S.C. 609, 614, 713 S.E.2d 634, 636 (S.C. 2011). Thus, "an at-will employee may be terminated at any time, for any reason or for no reason, with or without cause." *Id.* Plaintiff seeks to invoke the "public policy exception" to the at-will-employment doctrine in support of her argument that she was an employee of the Newberry DSN Board, and that Defendant Owens terminated her without notice because she reported that someone in her care had been abused. (ECF No. 166 at 12.) Under the "public policy exception" to the at-will employment doctrine, a South Carolina at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. *Barron*, 393 S.C. at 636-37. (ECF No. 166

---

[4]Plaintiff does not allege that she was employed by the DDSN Defendants and the DDSN Defendants maintain that there was no employment relationship between DDSN and Plaintiff.

at 12.)  The "public policy" exception Plaintiff references, however, applies as an exception to the employment at-will doctrine in an action for wrongful discharge.  *See Epps v. Clarendon Co.*, 304 S.C. 424, 426, 405 S.E.2d 386, 387 (S.C. 1991).  The public policy exception does not apply to situations where an employee has an existing statutory remedy for wrongful termination and does not aid Plaintiff here. *See Dockins v. Ingles Markets, Inc*., 306 S.C. 496, 497, 413 S.E.2d 18, 18-19 (S.C. 1992) (employee allegedly terminated in retaliation for filing complaint under Fair Labor Standards Act had existing statutory remedy for wrongful termination); *see also  Epps v. Clarendon Co.*, 304 S.C. 424, 426, 405 S.E.2d 386, 387 (S.C. 1991) (employee had an existing remedy for wrongful termination under 42 U.S.C. § 1983 for violation of his First Amendment Rights by alleging damages from hiring decisions based solely upon political belief or association).  Thus, even if this Court were to assume Plaintiff was an employee of the Newberry DSN Board, Plaintiff's discussion of the "public policy exception" to the at-will employment doctrine for wrongful discharge claims is simply a non-issue.  In this instance, having failed to establish a violation of any of her other constitutional rights (i.e., termination of employment based on employee's exercise of constitutionally protected rights such as speech) or a clearly established property interest based on a contract, Plaintiff must establish a property interest in "continued employment," and she has clearly failed to do so here. *Hamilton v. Bd. of Trs. of Oconee Cnty. Sch. Dist*., 282 S.C. 519, 524-25, 319 S.E.2d 717,721 (S.C. Ct. App.1984)("Ordinarily, a claimant is not entitled to substantive due process when her state employment is terminated unless she has a property interest in continued employment."); *see, e.g.*, *Robertson v. Rogers*, 679 F.2d 1090, 1091 (4th Cir. 1982)("The district court properly concluded that Robertson did not have a protected property interest in his continued employment. No statute created such an interest, nor did the employment contract itself. There was no written school policy creating

-14-

an expectation of continued employment."); *Foreman v. Griffith*, 81 Fed. Appx. 432, 439 (4th Cir. 2003)(holding that at-will deputy city attorney did not have a property interest in his continued employment or particular rank at the City Attorney's Office and thus could not sustain his property interest claim); *Nkwocha v. South Carolina State University*, No. 5:12-2703, 2014 WL 1278006, at *8 (D.S.C. 2014) (non-tenured, at-will employee employed pursuant to a series of written contracts detailing employment for a fixed time period and serving at the pleasure of the president did not have a constitutionally protected property interest).

Finally, the Court also finds that Plaintiff has failed to demonstrate a clearly established liberty interest. Interestingly, Plaintiff fails to make any specific arguments concerning a potential liberty interest in her opposition to Defendants' Motion for Summary Judgment. (ECF No. 166.) The Court made an early effort to identify any potential liberty interest and set forth the applicable law and discussion on any possible "liberty" claim in its order of November 7, 2012. (ECF No. 89.) As it may apply in this case a liberty interest " 'denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.' " *Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). An individual also has a "liberty" interest in his standing and reputation in the community, and in being free from stigma or disability that forecloses the freedom to take advantage of other employment opportunities. *Roth*, 408 U.S. at 573. Thus to summarize, a § 1983 claim in this context involves a combination of two constitutional rights: "(1) the liberty to engage in any of the common occupations of life ...; and (2)

-15-

the right to due process where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)).[5]

To the extent Plaintiff claims a deprivation of a liberty interest related to her allegations that Defendants made defamatory statements about her, damaged her standing in the community, and somehow affected her ability to obtain a license as a CTH I caregiver, the Court concludes that Defendants are entitled to qualified immunity. "Clearly established" for the purposes of qualified immunity, "means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In assessing whether the right at issue was clearly established at the time of the government official's actions, "the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (citation and internal quotation marks omitted); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Based on law and the facts

---

[5]Although the liberty interest protected by the Fourteenth Amendment includes the freedom to "engage in any of the common occupations of life," this right is not so broad as to protect an individual's right to a particular job. Instead, "[i]t is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1259–60 (3d Cir.1994) (internal citations omitted); *Ulichny v. Merton Cnty. Sch. Dist.*, 249 F.3d 686, 704 (7th Cir. 2001) ("The cases have consistently drawn a distinction, however, between occupational liberty and the right to hold a specific job.")

presented, this Court cannot conclude that Defendants violated a clearly established constitutional liberty interest.

"In order to state a claim for violation of the liberty interest in her good name and reputation, plaintiff must allege facts sufficient to show (i) that '[her] superiors made charges against her that might seriously damage [her] standing and associations in [her] community or otherwise imposed on [her] a stigma or other disability that foreclosed [her] freedom to take advantage of other employment opportunities,' (ii) that the charges were made public by the employer, (iii) that the charges were false, and (iv) that the stigmatizing remarks were 'made in the context of a discharge or significant demotion.'" *Echtenkamp v. Loudon Cnty. Pub. Sch*., 263 F.Supp.2d 1043, 1056 (E.D.Va. 2003) (citing *Stone v. Univ. of Md. Medical Sys. Corp*., 855 F.2d 167, 172 n.5 (4th Cir. 1988) (internal quotations omitted).  Apparently, the gist of Plaintiff's argument is that she had a clearly established right to her good reputation, but Plaintiff's general proposition "is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2084 (2011).  Simply put, "[t]o try to describe [Plaintiff's] property interest is almost to refute the possibility that it was so clearly established..." *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1213 (5th Cir. 1989).  Furthermore, Plaintiff has not established that any charges against her were made public nor has Plaintiff established the existence of an employment-related termination—critical elements of the test set forth in *Stone v. University of Maryland Systems Corporation* for "stigma" related liberty interest claims.  *See, e.g., Bell v. Town of Port Royal, South Carolina*, 486 F.Supp.2d 498 (D.S.C. 2008) (disclosures to government agency are not considered "public" for the purposes of a liberty claim); *Williams v. Watkins*, 379 S.C. 530, 665 S.E.2d 243, 247 (finding that defendants were immune from any potential liability as mandated reporters who had a

-17-

duty to report suspected abuse or neglect of vulnerable adults under South Carolina law). Additionally, "it is well established that even if statements by public officials may have been defamatory under state law, that tort alone does not constitute a constitutional violation." *Jackson v. Long*, 102 F.3d 722, 730 (4th Cir. 1996). The Court cannot conclude that the complained of statements and surrounding circumstances implicated a protected liberty interest. Finally, Plaintiff identifies no legal authority for the principle that she had a protectable liberty interest (or property interest) in maintaining a relationship with Sarah Doe and Sally Roe—particularly in the absence of a custodial relationship. Even if Defendants did deprive Plaintiff of a protected liberty interest, the interest was not so clearly established that Defendants would reasonably have known that they were violating Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

Plaintiff also asserts that Defendants' actions have violated her equal protection rights in that Defendants have established a pattern and practice of retaliation against employees and persons licensed or certified by DDSN and preventing Plaintiff from having a forum to redress wrongs. (ECF No. 62, ¶ 276.) In her opposition to the second motion for summary judgment, Plaintiff agues that Defendants violated Plaintiff's right to equal protection under the law by removing Sarah Doe and Sally Roe from her home. (ECF No. 166 at 20.) "'To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection [under the Fourteenth Amendment], plaintiffs must prove the existence of purposeful discrimination.'" *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)(citing *Batson v. Kentucky*, 476 U.S. 79 (1986)); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 825 (4th Cir.1995) ("A violation of the Equal Protection Clause still requires a showing of clear and intentional discrimination."). The plaintiff must demonstrate "that [she] received different treatment from that received by other individuals similarly situated." *Chambers ex rel.*

*Chambers v. School Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176 (3d Cir. 2009). A discriminatory purpose is not presumed. *Tarrance v. State of Florida*, 188 U.S. 519, 520 (1903). Having reviewed Plaintiff's responses in opposition to Defendants' motions for summary judgment as well as the entire record, including Plaintiff's complaint and amended complaint, the Court is still unable to identify exactly what Plaintiff alleges to be a violation of the equal protection clause. To establish an equal protection claim, Plaintiff is required to demonstrate that Defendants treated her differently than similarly situated individuals without a rational basis for doing so. Plaintiff's failure to meet this burden is fatal to Plaintiff's equal protection claim. Because Plaintiff has failed to establish that a violation of the Equal Protection clause even occurred, Defendants are entitled to qualified immunity on this aspect of Plaintiff's § 1983 claim.

Finally, the Court also concludes that Defendants are entitled to qualified immunity as to any claims Plaintiff may have asserted for harassment and retaliation under § 1983. "Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." *American Civil Liberties Union, Inc. v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir.1993). "A plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, *inter alia*, that she suffered some adversity in response to her exercise of protected rights." *Id.* In sum, to state a claim for retaliation under § 1983, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Bare or conclusory assertions of retaliation are simply insufficient to establish a retaliation claim. *Id* . at 74. A showing of adversity, more than a conclusory accusation, is essential to a retaliation claim, and Plaintiff has made no such

establishment of adverse impact here. *American Civil Liberties Union, Inc. v. Wicomico Cnty.*, 999 F.2d at 785.

Without more, Plaintiff generally alleges that Defendants conspired together to take away "her license," career, and ability to make a living in retaliation for exercising her constitutional rights, and that she feared retaliation in response to her efforts to protect Sarah Doe and Sally Roe. Here, Plaintiff's amended complaint merely states conclusions with regard to Defendants' actions and motivations without any specific or supporting facts that indicate that these Defendants harbored any retaliatory motive against Plaintiff—specifically the DDSN Defendants.   At this stage of the litigation, no evidence of such a motive has been set forth in the record before this Court.   Summary judgment is therefore appropriate as to Plaintiff's generally stated  retaliation claims. But even if Defendants' conduct could have formed the basis of a First Amendment retaliation claim, Defendants are entitled to summary judgment on the basis of qualified immunity.

Plaintiff also alleges generally that Defendant Fred Owens accused Plaintiff of neglecting Sarah Doe in order to terminate her license and her employment in retaliation.  (ECF No. 62, ¶ 5.) Defendants are also entitled to qualified immunity as to this claim.  Viewing the facts in the light most favorable to Plaintiff and assessed in light of the facts available to the Court, the undersigned concludes that Defendant Owens's alleged conduct in reporting potentially neglectful care of a vulnerable adult was objectively reasonable in light of the clearly established law at the time of the alleged violation and would not have violated Plaintiff's civil rights.  A reasonable official in Defendant Owens's position as a mandated reporter could have believed that such conduct was lawful, required, and thus protected.  Because the conduct complained of did not violate a clearly established right, Defendant Owens and the DDSN Defendants, to the extent they are alleged to have

participated in the alleged retaliation regarding any accusation of neglect, are entitled to the protections afforded by the qualified immunity doctrine and Plaintiff's § 1983 claims tied to the report of possible neglect are properly dismissed.

In sum, Plaintiff argues that she has provided the Court with material facts which support her various claims that Defendants have violated her constitutional rights in support of her § 1983 cause of action. Plaintiff maintains that her rights were clearly established such that Defendants are not entitled to qualified immunity. (ECF No. 166 at 11.) As fully discussed above, this Court simply cannot agree. The Court concludes that Defendants are entitled to qualified immunity as to Plaintiff's § 1983 claims.

2. 42 U.S.C. § 1985 Claims

Plaintiff also asserts a federal cause of action for a violation of her civil rights pursuant to 42 U.S.C. § 1985. Plaintiff generally alleges that Defendants have acted in concert to deprive Plaintiff of her property interest and her relationships and that Defendants are not entitled to immunity because they have acted outside of the scope of their employment. (ECF No. 62, ¶¶ 296-298.) Plaintiff's conspiracy claims are subject to the same result of dismissal as Plaintiff has only made unsupported, conclusory allegations regarding a conspiracy without sufficient factual support. The Fourth Circuit has held that "[t]he law is well settled that to establish a sufficient cause of action for 'conspiracy to deny equal protection of the laws' under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus[6] to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the

---

[6]Plaintiff has made no effort to satisfy this element of the § 1985 claim.

defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F. 3d 1370, 1376 (4th Cir. 1995) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985)).  Under this standard, the Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy" and has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.* at 1377.  Here, Plaintiff has failed to put forth the facts required to support a conspiracy claim.

Furthermore, Qualified immunity is defense to a claim under 42 U.S.C. § 1985(3). *See, e.g., Gooden v. Howard County, Md.*, 954 F.2d 960, 969-970 (4th Cir. 1992). "To avoid evisceration of the purposes of qualified immunity, courts have thus required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Id.*  Here, Plaintiff fails to satisfy the requirement and has only made unfounded conspiracy claims lacking support from the record evidence.  Further, the absence of a clearly established property or liberty interest is fatal to Plaintiff's civil conspiracy claim under 42 U.S.C. § 1985. *See, e.g., Perkins v. Silverstein*, 939 F.2d 463, 468 (7th Cir. 1991) (noting that § 1985 claim fails because Plaintiff failed to identify any protected property or liberty interest); *Parkman v. University of South Carolina*, 44 Fed.Appx. 606, 620 (4th Cir. 2002) ("As we previously explained . . .[Plaintiff] does not have a constitutionally protected property interest in his position as Head Music Librarian. As such, his statutory civil conspiracy claim under § 1985 cannot be sustained."). Accordingly, summary judgment is also appropriate as to Plaintiff's statutory civil conspiracy claims under § 1985 based on the defense of qualified immunity.

**B.  Eleventh Amendment and Claims against Defendants in their Official Capacity**

Plaintiff also asserts claims against Defendants in their official capacities.  In their second

motion for summary judgment, the DDSN Defendants argue that any claims for damages brought by Plaintiff against Defendants in their official capacities are barred by the Eleventh Amendment.[7] (ECF No. 164-1 at 17.)  In her response in opposition to the motion, Plaintiff mentioned "the issue of Eleventh Amendment immunity" in conjunction with several case citations but failed to respond to the Defendants' position besides suggesting that if an officer of the state abuses his authority, his actions are not considered acts of the state. (ECF No. 166 at 14-15.) Thus, it seems that Plaintiff is actually intending to proceed against the Defendants in their individual capacities because she is accusing them of acting outside of the scope of their employment.  To the extent the Defendants are sued in their official capacity, they are one in the same with their respective official entities, and are entitled to the same immunities. *See DeCecco v. University of South Carolina*, 918 F.Supp. 471, 505-06 (D.S.C. 2013).   As discussed fully below, the Eleventh Amendment bars this suit as to any actions taken by Defendants taken within the scope of their employment.[8]

        Federal law treats an action against defendants in their official capacities as an action against the state or government entity itself.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").  With certain exceptions,

---

[7]The same Eleventh Amendment analysis would apply to Defendant Owens.

[8]As noted above, Plaintiff fails to allege facts demonstrating the Defendants acted outside the scope of their required duties and that Defendants violated any of her clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities. *See Bellamy v. Borders,* 727 F. Supp. 247, 251 (D.S.C. 1989) ("Plaintiff's complaint must survive a two-part inquiry to defeat defendants' motion. First, plaintiff's complaint must allege sufficient facts to reveal the subject individual state officers were acting outside the scope of their employment. Second, the complaint must also allege specific facts demonstrating that the actions of the individual state defendants were objectively unreasonable 'assessed in light of the legal rules that were 'clearly established' at the time [they were] taken.'")

the Eleventh Amendment prohibits federal courts from entertaining suits brought against the states. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890).  It is also well established that this immunity extends to any state instrumentality that is considered an "arm of the State." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). State agencies and state instrumentalities share this immunity when they are the alter egos of the state. *Id.*  Additionally, the immunity extends to state officers acting in their official capacity because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996).

Immunity from suit under the Eleventh Amendment is not absolute. An immunity defense for damages claims is unavailable if: (1) Congress has abrogated a state's immunity pursuant to its powers under the Fourteenth Amendment; or (2) a state has waived its immunity by consenting to suit in federal court. *See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).  The Supreme Court has made clear that Eleventh Amendment immunity is abrogated only where "Congress unequivocally expresses its intend to abrogate" and "Congress acted pursuant to a valid grant of constitutional authority." *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *Board of Trus. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001). Congress has not overridden the states' Eleventh Amendment immunity in § 1983 or 1985 cases.[9] *See Quern v. Jordan*, 440 U.S. 332, 343 (1979); *Martin v. Clemson University*, 654 F.Supp. 2d 410 (D.S.C. 2009). Further, South Carolina has not waived its immunity by consenting to suit in federal court. *See*

---

[9]Additionally, an agency of the State of South Carolina is not a "person" within the meaning of within the meaning of 42 U.S.C. §§ 1983, 1985(3). *See Patterson v. South Carolina Workers' Compensation Comm'n*, No. 3:10-2968, 2011 WL 2559528 (D.S.C. Jun. 28, 2011).

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); S.C.Code Ann. § 15–7820(e) (1976) (providing that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another state). Therefore, Eleventh Amendment immunity protects South Carolina state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Additionally, the Eleventh Amendment also generally bars the court from granting injunctive relief against the state. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) ("[T]he relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."); *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743,765 (2002) ("[S]overeign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief."). The general rule is subject to a narrow exception concerning claims for injunctive relief sought from state officials first recognized in *Ex parte Young*, 209 U.S. 123 (1908). A plaintiff may bring suit "against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of *federal law*.'" *Seminole Tribe of Florida*, 517 U.S. at 73 (1996) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)) (emphasis added). The *Ex Parte Young* exception "does not apply when the alleged violation of federal law occurred entirely in the past." *Debauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999). Consequently, to the extent Plaintiff seeks relief for any alleged violations committed by the Defendants entirely in the past, these claims are barred by the Eleventh Amendment and are therefore dismissed on that ground.

The Amended Complaint, however, also fails to set forth a  basis in federal law for prospective injunctive relief to avoid the bar of the Eleventh Amendment. Importantly, the *Ex Parte*

*Young* exception "does not apply to actions against State officials seeking to compel their compliance with state law.*"  See, e.g., Antrican v. Odom*, 290 F.3d 178, 187 (4th Cir. 2002) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)); *see also N. Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984) ("A party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law."). If Plaintiff is in fact seeking "injunctive" relief in the form of an order as it may relate to the termination of employment or the restoration of Plaintiff's license as a CTH I caregiver, such relief is simply unavailable—"any injunction against State officials. . .would command them to comport with the State's own law, not federal law..." *Antrican*, 290 F.3d at 187 (internal citation and quotation omitted).

Defendant Owens raises additional arguments which concern Plaintiff's claims against him brought in his official capacity.  Specifically, Defendant Owens argues that any acts or omissions by him an employee of the DSN Board as alleged by Plaintiff may not be imputed to the Board on a respondeat superior theory and that he is no longer the Director of the Newberry DSN Board for the purposes of Plaintiff's request for declaratory or injunctive relief.  (ECF No. 165-1 at 13-14.)  The case against Defendant Owens must be dismissed for these additional reasons as well.  Although a government entity and its officers sued in their official capacity can be held directly liable under § 1983 when a "policy or custom. . . inflicts the injury," this Court finds that Plaintiff has not alleged, nor produced evidence of facts sufficient to support this sort of claim, which is not applicable in § 1983 actions.  *See Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978) (holding "that a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory"). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one

inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).   Plaintiff's sweeping allegations fail to identify a policy, practice or custom undergirding Defendants' unconstitutional behavior.   Further, Plaintiff's failure to state predicate  § 1983 and  § 1985 claims against the individual defendants necessarily means that Plaintiff has failed to state supervisory or *Monell* liability claims.  The Court will grant the Defendants' motion for summary judgment as to Plaintiff's § 1983 and § 1985 claims to the extent they are brought against the individual defendants in their official capacity and against their respective government agencies.

### C.  Fourth Amendment Claim

Plaintiff raises a Fourth Amendment argument in her response to Defendants' Motion for Summary Judgment which is primarily aimed at Defendant Owens in that he "exceeded his authority. . .by entering Plaintiff's home, armed with two police officers, removing the property of Sarah and Sally without a warrant." (ECF No. 166 at 19.)   The Court has made a careful review of Plaintiff's amended complaint and has identified one paragraph of the amended complaint which makes reference to the Fourth Amendment.  Additionally, as part of her § 1983 cause of action, Plaintiff contends that Defendant Owens entered her home and searched and seized paperwork about the two women in her care, as well as their personal effects. (ECF No. 622, ¶¶ 274, 278.)   Plaintiff does not make any allegations concerning any potential Fourth Amendment violation committed by the DDSN Defendants and has not made a separate Fourth Amendment claim in her Amended Complaint.  Thus it appears Plaintiff may have also intended to assert a § 1983 claim against Defendant Owens based on an alleged violation of the Fourth Amendment, and in all fairness to Plaintiff, the Court will construe it as such, and address the claim herein.  Defendant Owens is entitled to qualified immunity as to any alleged claim of unlawful search and seizure.

The Fourth Amendment protects individuals from "unreasonable searches and seizures by government officials and those private individuals acting as 'instrument[s] or agent[s]' of the Government." *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003); *see also United States v. Place*, 462 U.S. 696 (1983).   It is somewhat unclear from the wording of Plaintiff's pleadings whether Plaintiff is alleging that *her* Fourth Amendment rights were violated or *Sarah Doe and Sally Roe's* Fourth Amendments rights were violated.  To the extent Plaintiff is claiming harm from Sally, Sarah, and their respective personal belongings being "removed" from the CTH I facility, this claim fails as a matter of law.  The Fourth Amendment right to be free from unreasonable government seizures is personal. *See Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."); *see also  Gedrich v. Fairfax Cnty. Dep't of Family Servs.*, 282 F.Supp.2d 439, 468 (E.D.Va. 2003) (finding that only the child could raise a Fourth Amendment violation claim relating to her custody). Whether Defendant Owens and/or others followed the "clearly established and effective legal procedure to effect the removal of vulnerable adults from an unsafe situation" is simply not an issue for Plaintiff to raise on behalf of others. (ECF No. 166 at 4.) Further, even if such "seizure" claims had been properly brought, Defendant Owens would be entitled to qualified immunity.

Finally, to the extent Plaintiff would seek to characterize Defendant Owens' visit to her home as an unconstitutional search in violation of the Fourth Amendment, Defendant Owens is entitled to qualified immunity.  Determining whether a search and seizure is reasonable requires a balancing of the government's need to search with the invasion that the search entails. *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985). For example, investigative home visits by social workers are not subject to the

same scrutiny as searches in the criminal context. *Wyman v. James*, 400 U.S. 309, 318 (1971) (New York law making receipt of welfare benefits contingent on caseworker's home visit does "not fall within the Fourth Amendment's proscription...because it does not descend to the level of unreasonableness...which is the Fourth Amendment's standard."); *see, e.g., Wildauer v. Frederick County,* 993 F.2d 369 (4th Cir. 1993) (finding that social worker's visit to foster home did not violate the plaintiff's right to be free from unreasonable searches under the Fourth Amendment). Under the circumstances, the entry into Plaintiff's home (operating as a  licensed residential habilitation facility), was not unreasonable.   In light of Defendant Owens' statutory and administrative obligations to ensure compliance with relevant regulations and standards for licensed facilities, Defendant Owens is protected by qualified immunity for the entry into Plaintiff's home since he did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Gooden v. Howard County*, 954 F.2d 960 (4th Cir. 1992) (Police officers who seized allegedly distraught woman from her home and took her to psychiatric hospital were protected by qualified immunity and acted reasonably under the circumstances.); *see also* S.C. Reg. 88-210(H); S.C. Code Ann. § 43-35-15(A).

> ### D.     Supplemental Jurisdiction over Remaining State Law Claims

Having addressed Plaintiff's federal law claims,[10] the only remaining causes of action are state law claims.  Specifically, the remaining state law claims are Plaintiff's fraud and misrepresentation,

---

[10]Plaintiff appears to have abandoned any claim that Defendants violated Plaintiff's right to receive compensation for residential habilitation pursuant to 42 U.S.C. § 1396a(a)(30), to the extent such a private right for individuals can even be enforced under § 1983. (ECF No. 62, ¶ 284.)  Defendants would also be entitled to qualified immunity for any such claim as it is not clearly established that there is an individual right under § 1396a enforceable under § 1983.

intentional interference with a contract, wrongful discharge, common law conspiracy, defamation, and intentional infliction of emotional distress claims.  The United States Court of Appeals for the Fourth Circuit has held that "the federal courts are courts are courts of limited jurisdiction." *McQuillen v. National Cash Register Co.*, 112 F.2d 877, 881 (4th Cir. 1940). This court can decline to continue the action as to any pendent state claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("trial courts enjoy wide latitude in determining whether . . . to retain jurisdiction over state claims when all federal claims have been extinguished").   Because this court has dismissed all claims over which it had original jurisdiction, the court declines to retain jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.[11]  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966);  28 U.S.C. § 1367(d).

## CONCLUSION

For the reasons stated and discussed above, Defendants Eugene Laurent, Tana Vanderbilt, and Sam Davis's Second Motion for Summary Judgment (ECF No. 164), and Defendant Fred Owens's Second Motion for Summary Judgment (ECF No. 165) are hereby GRANTED.    Plaintiff's federal claims against the remaining Defendants are dismissed with prejudice. The court declines to exercise supplemental jurisdiction over Plaintiff's state law causes of action and they are, accordingly, dismissed without prejudice.

IT IS SO ORDERED.

---

[11]Plaintiff has alleged that there is diversity of citizenship as to Defendant Laurent, who is now a resident of Florida (ECF No. 62,  ¶16), but this does not keep the case in federal court, because complete diversity does not exist where all other Defendants are South Carolina residents. *See, e.g., Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State.").

<u>/s/Mary G. Lewis</u>
United States District Judge

Spartanburg, South Carolina
July 7, 2014